IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICOLE MOLL, Administrator of the Estate of Paul L. Robbins, III,** | : : : : : : : : : : : : : | CIVIL ACTION NO. 1:14-CV-1040 (Chief Judge Conner) |
| **Plaintiff** | | |
| v. | | |
| **PRUCO LIFE INSURANCE COMPANY,** | | |
| **Defendant** | | |

## MEMORANDUM

Presently before the court in the above-captioned matter is a dispute over defendant Pruco Life Insurance Company's ("Pruco's") denial of a death benefit sought by plaintiff Nicole Moll ("Moll"). Moll and Pruco have filed cross-motions for summary judgment. (Docs. 34, 36). The court will grant Pruco's motion (Doc. 36) in its entirety.

### I.  Factual Background & Procedural History

The pertinent facts are largely undisputed.[1] Moll is the step-daughter of the late Paul L. Robbins, III ("Robbins") and the administrator of his estate. (Doc. 1 ¶¶

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual information contained herein derives from the parties' statements of material facts. (See Docs. 38, 39, 41, 42). To the extent facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the parties' statements of material facts.

3-4; Doc. 16 ¶¶ 3-4; Doc. 38 ¶ 34; Doc. 42 ¶ 34). Pruco is an insurance company with its principal place of business in Newark, New Jersey. (Doc. 1 ¶ 5; Doc. 16 ¶ 5). In 2012, Robbins purchased a Pruco life insurance policy ("the policy"). (Doc. 39 ¶¶ 1, 5; Doc. 41 ¶¶ 1, 5). The policy provides for a death benefit of $250,000 to be paid to the named beneficiaries upon Robbins' death. (Doc. 39 ¶ 2; Doc. 41 ¶ 2). Robbins named Moll, his two other step-children, and Moll's minor son (collectively, "the beneficiaries") as beneficiaries under the policy. (Doc. 39 ¶ 2; Doc. 41 ¶ 2; see also Doc. 1 ¶ 10; Doc. 16 ¶ 10). The policy—if in force at the time of Robbins' death—entitles Moll to thirty-three percent of the death benefit. (Doc. 39 ¶ 2; Doc. 41 ¶ 2).

Robbins elected to pay his insurance premiums on a monthly basis at a rate of $42.53. (Doc. 38 ¶¶ 5-6; Doc. 42 ¶¶ 5-6; see also Doc. 37-2 at 6). The policy contains the following relevant provisions:

> Contract premiums are due on the contract date and every 1 month after that date.
>
> . . . .
>
> We grant a 31-day grace period for paying each premium except the first one. If the premium has not been paid by its due date, the contract will stay in force during the grace period. If the premium has not been paid when its grace period is over, the contract will end and have no value.
>
> . . . .
>
> This policy and any attached copy of an application . . . form the entire contract.

(Doc. 37-2 at 6, 9, 13). The policy identifies "July 3, 2012" as the "Contract Date." (Id. at 4). Hence, Robbins owed his insurance premiums on the 3rd of each month. (Id. at 4, 6). He could also pay within the attendant 31-day grace period. (Id. at 13).

Robbins made an initial premium payment by debit card on July 14, 2012. (Doc. 38 ¶ 12; Doc. 42 ¶ 12). Robbins thereafter arranged to make future payments by automatic withdrawal from his bank account. (Doc. 39 ¶¶ 6-7; Doc. 41 ¶¶ 6-7). In August of 2012, Robbins completed and signed Pruco's Electronic Funds Transfer form ("EFT Form"). (Doc. 39 ¶ 6; Doc. 41 ¶ 6). The EFT Form required Robbins to select a monthly withdrawal date "between the 1st and 28th of the month." (Doc. 37-4 at 3; see also Doc. 39 ¶ 8; Doc. 41 ¶ 8). It further noted that "[t]he monthly withdrawal date must be on or before the premium due date." (Doc. 37-4 at 3). Robbins chose the 18th of each month as his withdrawal date. (Id.; see also Doc. 39 ¶ 9; Doc. 41 ¶ 9).

Robbins did not remit his August 3, 2012 premium payment prior to submitting the EFT Form, which Pruco received on August 20, 2012. (Doc. 38 ¶¶ 7-8; Doc. 42 ¶¶ 7-8; see also Doc. 37-4). In a letter dated August 24, 2012, Pruco proposed a payment withdrawal schedule adjusting for Robbins' missed payment. (Doc. 37-5 at 2; see also Doc. 38 ¶ 9; Doc. 42 ¶ 9). Pruco's correspondence conveyed in relevant part:

> The first withdrawal is $42.53 for this contract's August payment. We will delay collection until September 10, 2012, to ensure that you receive this notice before the payment is withdrawn.
>
> Beginning September, 2012, a $42.53 payment is scheduled to be withdrawn from your account on the 18th

3

        of each month.  When the 18th falls on a weekend or holiday, the withdrawal will usually apply the next business day.

(Doc. 37-5 at 2).  Consistent with this written correspondence, Pruco withdrew payments from September of 2012 to February of 2013.  (Doc. 38 ¶ 12; Doc. 42 ¶ 12). Robbins' entire payment history pursuant to the policy is summarized as follows:

| Premium Due Date | Payment Date | Amount |
|---|---|---|
| July 3, 2012 | July 14, 2012 | $42.53 (Visa debit) |
| Aug. 3, 2012 | Sept. 10, 2012 | $42.53 (EFT) |
| Sept. 3, 2012 | Sept. 18, 2012 | $42.53 (EFT) |
| Oct. 3, 2012 | Oct. 18, 2012 | $42.53 (EFT) |
| Nov. 3, 2012 | Nov. 19, 2012 | $42.53 (EFT) |
| Dec. 3, 2012 | Dec. 18, 2012 | $42.53 (EFT) |
| Jan. 3, 2013 | Jan. 19, 2013 | $42.53 (EFT) |
| Feb. 3, 2013 | Feb. 19, 2013 | $42.53 (EFT) |

(Doc. 38 ¶¶ 11-12; Doc. 42 ¶¶ 11-12; see also Doc. 37-18 at 2).

      On February 9, 2013, Robbins called Pruco to request removal from the EFT program and cancellation of his policy.  (Doc. 38 ¶¶ 14-17; Doc. 42 ¶¶ 14-17; see also Doc. 37-7, Nicole Moll Dep. 49:9-51:20, Feb. 4, 2015 ("Moll Dep.")).  Pruco had already scheduled the February auto-debit, but it removed Robbins from the EFT program after that transaction.  (Doc. 38 ¶¶ 16-17; Doc. 42 ¶¶ 16-17; see also Moll Dep. 49:9-51:20).  Robbins made no payments after the February 19, 2013 EFT withdrawal.  (Doc. 38 ¶¶ 12, 22; Doc. 42 ¶¶ 12, 22).  In response to Robbins' request, Pruco mailed cancellation forms to him, with instructions to complete and return the forms to Pruco.  (Doc. 38 ¶ 18; Doc. 42 ¶ 18).  Robbins did not return the

cancellation forms to Pruco. (Doc. 38 ¶ 21; Doc. 42 ¶ 21; see also Moll Dep. 49:9-51:20).

Pruco mailed several notices of the upcoming March 3, 2013 premium due date to Robbins. (Doc. 38 ¶ 18; Doc. 42 ¶ 18). The notices informed Robbins that the policy would lapse if he did not pay the premium by the end of the grace period on April 3, 2013. (Doc. 38 ¶¶ 18-21; Doc. 42 ¶¶ 18-21). Robbins made no further payments, and the policy lapsed on April 3, 2013. (Doc. 38 ¶ 22; Doc. 42 ¶ 22; Doc. 39 ¶ 25; Doc. 41 ¶ 25).

Robbins died on April 8, 2013. (Doc. 38 ¶ 23; Doc. 42 ¶ 23). Moll called Pruco to inquire about Robbins' policy on several occasions after his death. (Doc. 38 ¶ 26; Doc. 42 ¶ 26). A Pruco agent informed Moll each time that the policy had lapsed due to non-payment and that Pruco therefore owed no death benefits. (Doc. 38 ¶ 27; Doc. 42 ¶ 27). Pruco representatives also sent letters to the beneficiaries advising that death benefits would not be paid. (Doc. 38 ¶ 29; Doc. 42 ¶ 29). Moll nonetheless sought payment by submitting a formal claim. (Doc. 1 ¶¶ 27, 29; Doc. 16 ¶¶ 27, 29). In a May 10, 2013 letter, a Pruco agent denied Moll's claim. (Doc. 1 ¶ 30; Doc. 16 ¶ 30; see also Doc. 2-6 at 1).

Beginning in the summer of 2013, counsel retained by the beneficiaries ("counsel") corresponded with Pruco representatives about Pruco's denial of benefits. (Doc. 37-14). In August of 2013, counsel requested clarification as to whether Pruco's monthly EFT withdrawals paid for "the monthly period already underway or the monthly period to begin on the 3rd of the following month." (Doc. 37-14 at 3). A Pruco agent replied that, because of the need to protect confidential

information, Pruco could not release information about Robbins' policy without a "court order appointing the executor/administrator for the insured's estate or court ordered subpoena." (Doc. 37-15 at 3).

The beneficiaries opened an estate for Robbins, and counsel repeated the request for information in January of 2014. (Docs. 2-11, 2-13; Doc. 38 ¶ 34; Doc. 42 ¶ 34). On April 7, 2014, a Pruco representative confirmed that each regular EFT withdrawal applied to the premium period that had already begun on the 3rd of the month. (Doc. 37-17 at 13-14). Shortly thereafter, counsel wrote to Pruco claiming that "Pennsylvania law requires that premiums be paid in advance." (Doc. 37-16 at 7). In a final correspondence from Pruco dated May 1, 2014, associate manager Angela Pompey ("Pompey") reiterated the denial of benefits. (Doc. 37-17 at 15). She maintained that Pruco did not wrongly administer Robbins' EFT payments. (Id.)

On May 29, 2014, Moll commenced the instant action asserting claims for breach of contract and bad faith. (Doc. 1). After a period of discovery, Moll and Pruco filed cross-motions (Docs. 34, 36) for summary judgment. The motions are fully briefed (see Docs. 35, 37, 40, 43, 46) and ripe for disposition.[2]

## II. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of

---

[2] Moll also filed a request (Doc. 47) for oral argument on the parties' respective motions. The court finds oral argument unnecessary to disposition of the instant motions and therefore declines Moll's request.

proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Federal Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

### III. Discussion

#### A. Breach of Contract

The substantive law of Pennsylvania applies in this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 474 (3d Cir. 2001). Pennsylvania courts define the elements of a breach of contract claim as: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and

7

(3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). The court will address Moll's separate theories of contractual liability *seriatim*.

### 1. *The "Payable in Advance" Provision*

Moll contends that Pruco breached an implied contractual provision requiring it to apply all of Robbins' payments as advance premiums. (Doc. 35 at 8-9). Pennsylvania's Insurance Company Law of 1921 (the "Insurance Act") provides, in pertinent part, that no life insurance policy may be "delivered in this Commonwealth unless it contains . . . [a] provision that all premiums shall be payable in advance." 40 PA. STAT. AND CONS. STAT. ANN. § 510(a) (the " 'payable in advance' provision" or "the provision"). Robbins' policy does not contain this provision. (See Doc. 37-2). Nonetheless, a statutorily mandated contract provision becomes an implied term in every policy despite an insurer's failure to include it. See West v. Lincoln Benefit Life Co., 509 F.3d 160, 164 (3d Cir. 2007); Willisch v. Nationwide Ins. Co. of Am., 852 F. Supp. 2d 582, 607 (E.D. Pa. 2012) (citing Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 147-48 (3d Cir. 1993)); Stroback v. Camaioni, 674 A.2d 257, 261 (Pa. Super. Ct. 1996). Hence, the statutory "payable in advance" provision is an implied term in the policy *sub judice*.

Moll's first breach of contract theory turns on the court's interpretation of the implied "payable in advance" provision. Moll argues that the provision creates a duty on Pruco's part to apply payments as advance premiums, while Pruco asserts that it simply allows policyholders to pay in advance. (Doc. 35 at 9-10; Doc. 37 at 14). Moll's argument assumes a strict interpretation of the term "payable": "must be

8

paid." (Doc. 35 at 9-10).  According to this interpretation, "all premiums shall be payable in advance" translates to "all premiums *must be paid* in advance."  In contrast, Pruco offers a permissive interpretation: "able to" or "may be paid," such that "all premiums *may be paid* in advance."  (Doc. 37 at 14).

The Supreme Court of Pennsylvania has not yet addressed the "payable in advance" provision.[3]  This court must thus predict how the state supreme court would interpret the dispositive language, to wit, that "all premiums shall be payable in advance."  See R.W. Sidley, Inc. v. U.S. Fid. & Guar. Co., 319 F. Supp. 2d 554, 561 (W.D. Pa. 2004); Kohr v. Raybestos-Manhattan, Inc., 522 F. Supp. 1070, 1074 (E.D. Pa. 1981).  Principles of state statutory interpretation, set forth in Pennsylvania's Statutory Construction Act of 1972 (the "Statutory Construction Act"), guide this analysis.  See 1 PA. STAT. AND CONS. STAT. ANN. § 1901; Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 369 (3d Cir. 1996).

Per the Statutory Construction Act, the objective of statutory interpretation is to "effectuate the intention of [Pennsylvania's] General Assembly."  1 PA. STAT. AND CONS. STAT. ANN. § 1921(a).  A court must observe the following overarching interpretive principle:

> Every statute shall be construed, if possible, to give effect to all its provisions.

---

[3] In West v. Lincoln Benefit Life Co., 509 F.3d 160, 164 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit briefly described the "payable in advance" provision as "requir[ing] that all premiums may be paid in advance." At first blush, the West description appears to support the permissive interpretation of the provision. (See Doc. 37 at 14). However, West involved a different Insurance Act provision, and its gloss of the "payable in advance" provision is mere dicta. See West, 509 F.3d at 164. Hence, West provides no meaningful support to the instant analysis.

9

Id.; see also Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner), 39 A.3d 287, 290 (Pa. 2012).  Particular words and phrases should be interpreted "according to rules of grammar and according to their common and approved usage."  1 PA. STAT. AND CONS. STAT. ANN. § 1903(a); see also Allstate Life Ins. Co. v. Commonwealth, 52 A.3d 1077, 1080 (Pa. 2012).  A court should only resort to considerations beyond plain meaning, such as legislative history and the circumstances of enactment, when "the words of the statute are not explicit."  1 PA. STAT. AND CONS. STAT. ANN. § 1921(c); see also Commonwealth v. McCoy, 962 A.2d 1160, 1166 (Pa. 2009).  When the language of a statute is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 PA. STAT. AND CONS. STAT. ANN. § 1921(b).

Pennsylvania courts turn to the dictionary definition of a term to ascertain its plain meaning.  See Kistler v. State Ethics Comm'n, 22 A.3d 223, 227 (Pa. 2011); McCoy, 962 A.2d at 1166.  The dictionary definition of "payable" is "that may, can, or must be paid."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009).  This disjunctive denotation includes both permissive and strict meanings and, by its nature, appears to create ambiguity.  See id.

Moll effectively concedes that the Pennsylvania legislature cannot have intended a strict definition of payable.  She acknowledges that "[o]f course it's true that a payment can be made after the premium due date." (Doc. 43 at 13).  Indeed, the Insurance Act's grace period provision expressly sanctions late payments:

> [T]he insured is entitled to a grace, either of thirty days or one month, within which the payment of any premium . . .

10

> may be made [ . . . , ] during which period of grace the
> policy shall continue in full force.

40 PA. STAT. AND CONS. STAT. ANN. § 510(b). The strict construal of the "payable in advance" provision would nullify the grace period through its rigid directive that "*all* premiums *must be paid* in advance." This repercussion violates the Statutory Construction Act's overarching command that a statute must be construed "to give effect to all its provisions." 1 PA. STAT. AND CONS. STAT. ANN. § 1921(a). Logically, a permissive interpretation best effectuates the legislature's intent.[4]

The court further finds that Pruco did not breach the implied "payable in advance" provision. Nothing in Robbins' policy precluded him from making early payments, (see Doc. 37-2), and Pruco's EFT payment option had no impact on Robbins' ability to make early payments. Robbins selected his own premium withdrawal date. (Doc. 37-4 at 3). It is undeniable that Robbins knew how Pruco applied his withdrawn payments; he did not protest Pruco's payment application nor did he attempt to make advance payments. (Doc. 37-5 at 2; see also Doc. 38 ¶ 9; Doc. 42 ¶ 9). The record therefore reveals no breach of the "payable in advance" provision as construed by the court.

    2.    ***The EFT Form***

Moll alternatively cites the EFT Form as the source of Pruco's obligation to apply payments as advance premiums. (Doc. 35 at 12-15). The EFT Form provides

---

[4] Moll also contends that the 18th of the month is the date on which Robbins' premiums were "payable," and that premiums were therefore "payable" after the due date on the 3rd. (Doc. 43 at 13). That Robbins paid his premiums after the due date does not somehow extend the due date. Moll's suggestion of a later due date is therefore rejected.

11

that the monthly withdrawal date "must be on or before the premium due date." (Doc. 37-4 at 3). According to Moll, this language requires Pruco to apply payments, upon withdrawal, to the upcoming rather than previous coverage period. (Doc. 35 at 13-14). However, the EFT Form does not modify the policy in the manner Moll suggests, and it also presents no freestanding source of Pruco's death benefit obligations.

### a. The EFT Form as a Modification of Policy Terms

Robbins' policy contains an integration clause declaring that the policy itself and Robbins' application "form the entire contract" (the " 'entire contract' clause"). (Doc. 37-2 at 9). The Insurance Act mandates inclusion of an "entire contract" clause in insurance policies. 40 PA. STAT. AND CONS. STAT. ANN. § 510(d). The purpose of the clause is to ensure that the clear terms of the insurance contract are not confused or contradicted by materials such as supplemental brochures, charts, or other documents. See Prousi v. UNUM Life Ins. Co. of Am., 77 F. Supp. 2d 665, 672-73 (E.D. Pa. 1999) (citing Jones v. Metro. Life Ins. Co., 39 A.2d 721, 726 (Pa. Super. Ct. 1944); Turley v. John Hancock Mut. Life Ins. Co., 168 A. 356, 358 (Pa. Super. Ct. 1933)). A court may rely on extraneous materials only to illuminate, but not to define or modify, contract terms. See id.

The supplemental EFT Form does not elucidate but instead conflicts with the policy and thus has no impact on Pruco's contractual duties. The policy permits the insured to make payments up to 31 days after each premium due date. (See Doc. 37-2 at 13). The EFT Form's purported requirement that payment withdrawals occur *before* each monthly due date stands in direct opposition to the policy's grace

period and would effectively modify this term. (See Doc. 37-4 at 3). Consequently, the court will not consult the EFT Form in resolving the instant dispute. See Prousi, 77 F. Supp. 2d at 672-73.

### b. The EFT Form as a Separate Contract

Moll also suggests that the EFT Form is its own contract and therefore a separate source of contractual rights. (Doc. 35 at 12-13). This argument is unavailing. The agreement is silent as to Pruco's obligation to pay the death benefits and speaks only to the optional EFT premium payment program. (See Doc. 37-4). In other words, the EFT Form addresses only the manner of premium payment, which would comprise a single term of a life insurance contract. See Robbins v. Metro. Life Ins. Co. of Conn., No. 08-0191, 2008 WL 5412087, at *4 (E.D. Pa. Dec. 29, 2008) (citing ROBERT H. JERRY, II, UNDERSTANDING INSURANCE LAW 36 (3d ed. 2002) (describing a life insurance contract as including fundamental term that insurer pay the death benefit upon the death of the insured)). Nothing in the EFT Form entitles Moll to the death benefit she seeks. (See Doc. 39 ¶ 2; Doc. 41 ¶ 2).

### B. Bad Faith

Moll lastly asserts a bad faith claim under "applicable common law" and Pennsylvania's insurance bad faith statute. See 42 PA. STAT. AND CONS. STAT. ANN. § 8371 ("Section 8371"). Moll contends that Pruco or its agents acted in bad faith by: (1) willfully and regularly violating the "payable in advance" provision; (2) erroneously denying Moll's insurance benefit; (3) failing to conduct a good faith investigation into whether Pruco's EFT payment application method violated Pennsylvania law; (4) declining to release information about Robbins' policy until

Moll opened an estate; and (5) refusing to answer questions about the denial of Moll's benefit in a timely manner. (Doc. 43 at 19-22).

As a preliminary matter, Pennsylvania courts do not recognize a common law remedy for bad faith on the part of insurers. See Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citing D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa. 1981); Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994)). The court therefore addresses Moll's bad faith argument solely under Section 8371.

Section 8371 provides for monetary remedies when a court concludes that an insurer acted in bad faith. See 42 PA. STAT. AND CONST. STAT. ANN. § 8371. The statute does not define bad faith, but Pennsylvania courts broadly consider it to be "any frivolous or unfounded refusal to pay the proceeds of a policy." Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (quoting Terletsky, 649 A.2d at 688). An insurer engages in bad faith when it has no "reasonable basis for denying benefits" and knows of or recklessly "disregard[s] its lack of a reasonable basis in denying the claim." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). A reasonable basis exists when an insurer's investigation is "sufficiently thorough to yield a reasonable foundation" for its denial. Seto v. State Farm Ins. Co., 855 F. Supp. 2d 424, 431 (W.D. Pa. 2012) (quoting Krisa v. Equitable Life Assurance Co., 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000)). When a claim implicates

an area of insurance law that is unclear, an insurer must reach a "reasonable legal conclusion" to avoid bad faith liability.  See Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (citing Terletsky, 649 A.2d at 688-89).  The standard for proving bad faith is "clear and convincing" evidence.  See Babayan, 430 F.3d at 137.

Pruco's actions, and those of its agents, do not amount to bad faith under the extant case law.  As noted above, Pruco properly denied Moll's death benefit claim.  Robbins knew of Pruco's payment withdrawal schedule and the impending policy lapse.  (Doc. 38 ¶ 18; Doc. 42 ¶ 18; Moll Dep. 49:9-51:20).  He made no premium payments to prevent this lapse, and Pruco appropriately and timely declined to pay the death benefits.  (Doc. 38 ¶ 22; Doc. 42 ¶ 22; Doc. 39 ¶ 25; Doc. 41 ¶ 25).

**IV.   Conclusion**

The court will grant defendant's motion (Doc. 36) for summary judgment and deny plaintiff's motion (Doc. 34) for summary judgment.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      February 26, 2016